## Commonwealth v. Odeniyi

C.P. of Bucks County, nos. 804-2005, 805-2005.

*Ronald Elgart,* for appellant.
*Karen A. Diaz,* for appellee.

CEPPARULO, *J.,* February 22, 2010—

## I. INTRODUCTION

The Commonwealth appeals to the Superior Court of Pennsylvania from this court's grant of Post Conviction Relief Act (PCRA) relief to defendant Olusegun Sege Odeniyi based on a of violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966). Defendant also appeals to the Superior Court based on this court's denial of defendant's remaining PCRA claims.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A few minutes before 4 a.m., Thursday, November 11, 2004, officers from Bristol Township, Bucks County, Pennsylvania, responded to the 5700 block of Mitchell Road to a report of multiple gunshots in the Bloomsdale section of Bristol Township. Upon arrival, the officers discovered seven .45 caliber shell casings in the street, intermixed with shards of broken vehicle glass.

Shortly thereafter, a different police officer observed a white vehicle driving nearby the scene of the shooting with a shattered rear window. The officer stopped the vehicle and interviewed the occupants. Asa Brewington was the driver, Samantha Weismann, a female juvenile, was in the front passenger seat, and Taureen Jewett was in the rear passenger seat. Weisman stated that she was in the vehicle with Brewington, when Jewett walked up to the car and hastily dumped several items in her lap, including a small black bag, a digital scale, a cell phone and keys. Soon afterwards, while Weismann was still in the car, a fist fight between Brewington and defendant Olusegun Sege Odeniyi was broken up outside of the vehicle by Jewett. After the fight ended, Weismann over-heard Jewett and Brewington laughing at defendant because defendant said he was going home to get a gun and would return.

Brewington, Jewett and Weismann then left the area, but returned later that night. As they drove on Mitchell Road near its intersection with Airacobra Street, they were stopped and warned that defendant was back in the

neighborhood. As Brewington, Jewett and Weismann began to drive down the street, a series of loud gunshots rang out. Their rear window suddenly shattered and Weismann felt a bullet travel through her hair and out the passenger window to her immediate right.

After the investigatory police stop of Brewington's vehicle, several slugs were recovered from inside the vehicle, while another bullet was recovered from a nearby home, where it was lodged in a wall of a bedroom near a wheelchair.

At or about the time of the Bristol police stop, Officer Brian Detrick of Falls Township noticed a late model Buick station wagon speeding along nearby Mill Creek Road. Officer Detrick followed the vehicle with his overhead lights on, but the vehicle continued speeding through residential areas, disregarding traffic signs and almost hitting parked vehicles. Eventually defendant jumped from his moving vehicle and fled into a nearby wetlands. A police dog was used to track and apprehend defendant in the wetland area. Defendant was brought to Frankford Bucks Hospital to treat a dog bite on his shoulder and his hypothermia. After his release from the hospital several hours later, defendant was taken to the Falls Township Police Station.

At approximately 8:15 a.m. on that same morning, an employee of Waste Management Inc. turned in a handgun he found on a street in the North Park section of Falls Township, the same street and location where the vehicle chase with defendant occurred. Investigation determined that the spent shell casings on the ground at Mitchell

Road and the bullets recovered from inside Brewington's vehicle were fired from this same weapon.

Although initially uncooperative, the victims in this case eventually identified defendant as the person who shot at them. Brewington testified that he and defendant initially got into a verbal argument, which led to a fist fight. Notes of testimony, (N.T.) May 10, 2005 p. 126. Brewington recalled defendant saying that he was "going to get my gun". *Id.* at 129. Brewington was also shown a photographic lineup wherein he identified defendant as the shooter. *Id.* at 139.

At trial, Jewett was an uncooperative and hostile witness, but he did corroborate the individuals in the vehicle and his presence in the backseat during the shooting. *Id.* at 84-94. Jewett previously identified defendant as the shooter in a photo lineup, but at trial he denied knowing why the identification was made. *Id.* at 96. Jewett acknowledged his prior statement to police identifying defendant as the shooter. He testified at trial, however, that he was unable to identify the shooter the night of the shooting.

Weismann, a 16-year-old female juvenile, provided the clearest trial testimony. She indicated that she was in the vehicle during the initial fight between Brewington and defendant. *Id.* at 173. Weismann also indicated that when Jewett and Brewington returned to the vehicle, they were joking about defendant's claim that he was going to get a gun. *Id.* at 174. Weismann also testified that within seconds of being warned that defendant had returned to the area, shots were fired at their vehicle, shattering their rear window. *Id.* at 178-80. Weismann

further testified that as the glass shattered around her, she felt a bullet fly through her hair, and explode through the passenger side window next to her head. *Id.* at 181-82.

Defendant was arrested on November 11, 2004 and charged in Information 0805-2005 with attempted murder,[1] six counts of aggravated assault,[2] six counts of simple assault,[3] three counts of recklessly endangering another person,[4] and one count of disorderly conduct.[5] On Information 0804-2005, defendant was charged with fleeing or attempting to elude police officer,[6] recklessly endangering another person,[7] disorderly conduct[8] and three related vehicular summary offenses.

On May 12, 2005, after a three-day jury trial on both informations, which had been consolidated for trial, defendant was found guilty of all charges, except for two counts of aggravated assault. On September 2, 2005, on Information 0805-2005 defendant was sentenced to a term of incarceration of not less than seven and one-half, nor more than 15 years on the attempted murder charge and two consecutive sentences of not less than one, nor more than 10 years incarceration on two counts of aggravated assault. On Information 0804-2005, defendant was sentenced to a concurrent term of not less than one,

---

1. 18 Pa.C.S. §901.
2. 18 Pa.C.S. §2702(a)(1); 18 Pa.C.S. §2702(a)(4).
3. 18 Pa.C.S. §2701(a)(1); 18 Pa.C.S. §2701(a)(3).
4. 18 Pa.C.S. §2705.
5. 18 Pa.C.S. §5503(a)(1).
6. 75 Pa.C.S. §3733.
7. 18 Pa.C.S. §2705.
8. 18 Pa.C.S. §5503(a)(1).

nor more than two years of incarceration on the fleeing and eluding count. No further penalty was imposed on the remaining counts of either criminal information.

On September 30, 2005, defendant filed a direct appeal challenging the discretionary aspects of his sentence. The Superior Court of Pennsylvania affirmed this court's judgment of sentence on September 14, 2006. On November 27, 2006, defendant filed his first Post Conviction Relief Act (PCRA) petition seeking a nunc pro tunc petition for allowance of appeal to the Supreme Court of Pennsylvania. On February 1, 2007, defendant's first PCRA was granted and defendant filed his petition for allowance of appeal on March 23, 2007. The Supreme Court denied the petition on September 19, 2007.

On June 16, 2008, defendant filed his second PCRA petition. After several scheduling delays, a fully counseled PCRA hearing was held on July 16, 2009, wherein defendant primarily challenged trial counsel's effectiveness for failing to challenge the admission at trial of a non-*Mirandized* statement defendant made to police. After the PCRA hearing, the petition was held under advisement. On November 10, 2009, defendant's PCRA petition was granted and a new trial was ordered.[9] On December 16, 2009, a second order was issued formally denying the other issues raised in defendant's PCRA petition.

---

9. Based on the testimony at trial and at the PCRA hearing, we found trial counsel ineffective for failing to file a motion to suppress the non-*Mirandized* statement and a new trial was ordered due to the impact of this statement and its failure to qualify as harmless error.

The Commonwealth filed an appeal from the November 10 order, on December 1, 2009. Defendant, despite still being represented by PCRA counsel, filed a pro se cross-appeal on December 18, 2009.

## III. MATTERS COMPLAINED OF ON APPEAL

On December 21, 2009, the Commonwealth filed its statement of matters complained of on appeal, raising the following issue verbatim:

"This honorable court erred in granting appellee post-conviction collateral relief on his claim of ineffective assistance of counsel for failing to move to suppress 'non-*Mirandize*' statements subsequently introduced at trial, where appellee failed to plead and prove, and where this honorable court did not find, actual prejudice. Based on the evidence of appellee's guilt introduced at trial, appellant has not and cannot demonstrate that the verdict would have been different but for the admission of the aforementioned statement."

Defendant meanwhile filed his own pro se statement of matters complained of on appeal. Defendant is still being represented by appointed PCRA counsel, but for completeness of review, this court will address the following verbatim issues raised by defendant:

"I. Was PCRA counsel and appellant counsel ineffective for failing to argue on appeal, the evidence at trial by the Commonwealth was insufficient to establish the identity of the appellant as the shooter, to support the finding of guilt for aggravated assault, recklessly endan-

gering another person, simple assault and criminal attempt homicide. Beyond a reasonable doubt. (sic)

"II. Trial counsel was constitutionally ineffective for failing to file a pretrial motion in limine to have the gun, (sic) suppressed or excluded before trial.

"III. Appellant counsel was constitutionally ineffective for failing to argue on appeal, the trial court erred, (sic) when it consolidated the defendant's offenses for trial.

"IV. Trial counsel was constitutionally ineffective for failing to object to the trial court's erroneous jury charge on flight, that should not have been given.

"V. Did the PCRA court err, and abused it's (sic) discretion when he failed to rule on these issues and should al (sic) the charges have been (sic) dismissed in accordance with sufficiency of the evidence issue, issue I and because of double jeopardy."

## IV. DISCUSSION

The Commonwealth asserts in its appeal that this court erred in granting defendant PCRA relief because the non-*Mirandized* statement was not prejudicial and defendant has not established that the verdict would have been different, but for the admission of the statement. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966).

The standard of review regarding PCRA claims of ineffective assistance of counsel is well settled:

"The PCRA provides relief to individuals who prove they were convicted of crimes they did not commit and

those receiving illegal sentences. 42 Pa.C.S. §9542. 'A defendant is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42 Pa.C.S. §9543(a)(2).' *Commonwealth v. Natividad,* 595 Pa. 188, 938 A.2d 310, 320 (2007). One of these circumstances is ineffective assistance of counsel. 42 Pa.C.S §9543(a)(2)(ii) (the PCRA provides relief to those individuals whose convictions or sentences 'resulted from . . . ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place'). To obtain relief under this provision, a defendant must plead and prove that: (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to defendant. *Commonwealth v. Collins,* 598 Pa. 397, 957 A.2d 237 (2008); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). 'A chosen strategy will not be found to have lacked a reasonable basis unless it is proven "that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." ' *Commonwealth v. Williams,* 587 Pa. 304, 899 A.2d 1060, 1064 (2006) (quoting *Commonwealth v. Howard,* 553 Pa. 266, 719 A.2d 233, 237 (1998)). 'Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different.' *Commonwealth v. Pierce,* 567 Pa. 186, 786 A.2d 203, 213 (2001); *Strickland v. Washington,*

466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel is presumed to have been effective and the burden of rebutting that presumption rests with the defendant. *Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 728 n.10 (2000)." *Commonwealth v. Fletcher,* 2009 WL 5133421 (Pa. 2009).

Trial counsel was ineffective solely for his failure to move to suppress a non-*Mirandized* admission by defendant that placed defendant at the time and location of the shooting. Like the PCRA standard of review, the standard of review for *Miranda* violations is well settled:

"Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of . . . *Miranda* rights. *Commonwealth v. DiStefano,* 782 A.2d 574, 579 (Pa. Super. 2001), *appeal denied,* 569 Pa. 716, 806 A.2d 858 (2002). Custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [his] freedom of action in any significant way.' *Miranda, supra* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. 'The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent.' *Commonwealth v. Gaul,* 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied,* 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). Thus, 'Interrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect.' *Commonwealth v. Ingram,* 814 A.2d 264, 271 (Pa. Super. 2002), *appeal denied,* 573 Pa. 671, 821 A.2d 586 (2003). 'In evaluating whether *Miranda* warnings were

necessary, a court must consider the totality of the circumstances . . . .' *Gaul, supra.*" *Commonwealth v. Gonzalez,* 979 A.2d 879 (Pa. Super. 2009).

The statement at issue occurred while defendant was in police custody following his capture by a canine unit and soon after his treatment for hypothermia. It is unclear from the record, but while defendant was either receiving treatment at the hospital or while he was transported from the hospital to police headquarters, Officer Detrick asked defendant why he ran. N.T., May 10, 2005 pp. 253-55. The officer did not provide defendant with any *Miranda* warnings and the Commonwealth has not challenged the fact that this was a custodial interrogation that should have been preceeded with *Miranda* warnings. *Id.* Trial counsel, despite having knowledge of defendant's admission, did not seek to suppress the statement and defendant's response was introduced to the jury by the district attorney on direct examination of the police officer as follows:

"Q. And he acknowledged he was driving the car; is that correct?

"A. Yes.

"Q. Did you ask him why he was fleeing?

"A. He said he was scared.

"Q. Did he give you any other reason besides that?

"A. He was scared.

"Q. Did he tell you where he was coming from?

"A. Bloomsdale.

"Q. Did he say what he was doing in Bloomsdale?

"A. He was at a girl's house.

"Q. Did he say where he was going?

"A. Yardley." *Id.* at 253.

Defendant's admission that he was coming from the small neighborhood of Bloomsdale in Bristol Township a little after four in the morning affirmatively placed defendant at the time and location of the shooting and helped explain defendant's seemingly unprovoked flight from the police.[10]

The admission of this statement clearly should have been challenged by trial counsel. It was provided by the Commonwealth in discovery documents sent to trial counsel on April 13, 2005, yet counsel's explanation at the PCRA hearing as to why the statement was not challenged, was that counsel was unaware of the statement prior to trial and that he did not think the Commonwealth provided the statement in advance. N.T., July 16, 2009 pp. 37, 57-59. Counsel's stated reason for not challenging the defendant's statement was clearly in error and is not a reasonable basis for failing to challenge its admission.

The Commonwealth does not challenge this court's findings that the admission should have been challenged and that counsel did not have a reasonable basis for fail-

---

10. The shooting occurred several minutes before 4 a.m. N.T., May 10, 2005, pp. 34, 64. Officer Detrick began pursuit of defendant's speeding car, near the Bristol Township and Falls Township border, at approximately 4:06 a.m. *Id.* at 224.

ing to do so. The Commonwealth does claim, however, that counsel's actions did not prejudice defendant in such a way that there is "a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Fletcher,* 2009 WL 5133421 (Pa. 2009).

The admission of defendant's statement into evidence did have a reasonable probability of altering the outcome of the trial. There were other significant pieces of evidence tying defendant to the shooting in Bloomsdale, but much of this evidence came from uncooperative witnesses, who denied their prior statements identifying defendant as the shooter. While their prior inconsistent statements were presented to the jury, defendant's statement to the police became a significant piece of evidence because it placed defendant at the location and time of the shooting and gave further weight to the uncooperative witnesses' prior identifications of defendant.

When Taureen Jewett, one of the intended victims testified, he stated that he was under the influence of crack cocaine the night of the shooting and that he did not see the shooter. N.T. May 10, 2005, pp. 85, 87-88. He further claimed that he neither saw a fist fight between defendant and Asa Brewington, nor broke one up, and that he only identified defendant in the photograph lineup as someone he knew and not the shooter. *Id.* at 88-89, 94-97.

When Brewington testified, he admitted that he was in a fist fight with defendant and that the two of them were threatening one another, but he tried to deny his

statement to police that defendant threatened to get his gun. *Id.* at 125-27. Even after being presented with the statement he made to the police on the night of the shooting, Brewington still tried to deny that defendant made the specific threat to go get a gun. *Id.* at 127-29. Brewington also tried to distance himself from his prior police statement by denying his identification of defendant as the shooter, now claiming that he did not see the shooter. *Id.* at 132-35, 141-42.

Samantha Weismann was more cooperative than the other victims. She described the fist fight that occurred earlier in the night, she testified that Brewington and Jewett were laughing over defendant's threat to go get his gun, and she testified that they were stopped and warned that defendant was back in the neighborhood right before their car was shot. *Id.* at 172-74, 176-80. Weismann, however, testified that she could not identify the shooter. *Id.* at 191.

In addition to the three victims' testimonies, the jury was presented with evidence and expert testimony linking the gun found in the North Park section of Falls Township with the Bloomsdale shooting. The gun was recovered by a private employee of Waste Management, along the route defendant used to flee from the police. The bullets recovered from the victims' vehicle and from the bedroom wall of the nearby home were matched to the recovered gun.

While the jury heard conflicting identifications and retractions by the victims and was presented with evidence regarding the gun used in the shooting, the one piece of evidence that clearly established defendant's

presence in the Bloomsdale section at the time of the shooting was defendant's inadmissible statement to the police. What was surely intended as an exculpatory explanation by defendant, was in fact inculpatory, as it definitively placed defendant in Bloomsdale at the time of the shooting. While there was other circumstantial evidence, such as the recovered gun, defendant's flight from the police, and several witnesses' prior inconsistent identifications, defendant's own non-*Mirandized* admission was a significant piece of evidence linking the shooting and the flight together and there is a reasonable probability that but for counsel's error, the outcome of the proceeding would have been different.

Defendant, meanwhile, filed a separate appeal from his grant of post-conviction collateral relief. Defendant first claims that PCRA counsel and appellate counsel were ineffective for failing to challenge the sufficiency of the evidence. As PCRA counsel still represents defendant on appeal and cannot argue his own ineffectiveness, defendant's claims against PCRA counsel must be dismissed. Furthermore, appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence. Aside from defendant's own inculpatory statement to police, the handgun used in the Bloomsdale shooting was discovered by a sanitation worker along defendant's flight path from the police. Expert testimony identified this gun as the one that fired the bullets recovered both from the victims' vehicle and from the interior bedroom wall of a nearby house. Furthermore, while several witnesses tried at trial to retract their prior statements to police and prior photographic identification of defendant

as the shooter, their prior statements and identifications were presented to the jury, along with their inconsistent trial testimony. Finally, there was also defendant's seemingly unprovoked flight from the police. Viewing all the evidence received and drawing all reasonable inferences from the evidence in favor of the Commonwealth as verdict winner, there was sufficient evidence to convict defendant of the charged offenses and appellate counsel was not ineffective for failing to raise this issue on direct appeal.

Defendant's second claim is that trial counsel was ineffective for failing to suppress the gun found along the side of the road by an employee of Waste Management, a private corporation. As there is no basis for challenging the admission of a handgun discovered by a private citizen while working for a non-government organization, counsel was not ineffective. Furthermore, the Commonwealth sufficiently traced the chain of custody from the gun's discovery through the ballistics investigation and up until its introduction at trial. There is no basis for suppressing the gun and, therefore, trial counsel was not ineffective for failing to do so.

Defendant's third claim is that appellate counsel was ineffective for failing to challenge the consolidation of defendant's offenses for trial. The criminal charges resulting from the shooting in Bloomsdale and the criminal charges for defendant's flight from the police were properly consolidated as they were all the result of one criminal event. Within minutes of the Bloomsdale shooting, police attempted to stop defendant for speeding. Instead of stopping, however, defendant fled from the

police both via car and foot, eventually requiring a canine unit to track and apprehend him in wetlands off the side of the road. As all the charges contained in criminal informations numbers 804 and 805 of 2005 stemmed from the same event, they were properly consolidated pursuant to Pennsylvania Rule of Criminal Procedure Rule 582(A)(1). There was no basis for appellate counsel to file an appeal on the consolidation of the offenses and therefore counsel was not ineffective.

Defendant's fourth claim is that counsel was ineffective for failing to object to the trial court's jury charge on fleeing or attempting to elude a police officer. The charge provided to the jury was the standard jury instruction for fleeing or attempting to elude a police officer. N.T., May 12, 2005 pp. 95-97. At the PCRA hearing, defendant raised this issue, but was unable to elaborate on why the instruction was erroneous. N.T., July 16, 2009 pp. 17-19. As defendant was charged with one count of fleeing or eluding a police officer in criminal Information 804-2005, the appropriate charge was given to the jury. Again, as there was no basis for trial counsel to object to the instruction, trial counsel was not ineffective for failing to object to it.

Defendant's final claim is that this court abused its discretion by not ruling on each of defendant's PCRA issues and by not dismissing all of defendant's charges under either his sufficiency of the evidence argument or because of double jeopardy. Defendant was granted PCRA relief pursuant to a November 10, 2009 order. A subsequent order was issued by the court on December 16, 2009 clarifying that aside from defendant's *Miranda*

violation claims, all other raised issues were denied and dismissed. There is no issue of the court failing to rule on defendant's PCRA petition.

Furthermore, defendant is not entitled to the dismissal of his criminal charges on sufficiency of the evidence grounds. As discussed above, viewing the totality of the evidence in favor of the Commonwealth as verdict winner, there was sufficient evidence for the jury to find defendant guilty of all charges beyond a reasonable doubt. Defendant, nonetheless, was granted PCRA relief because trial counsel failed to identify or attempt to suppress defendant's non-*Mirandized* statement to police. Trial counsel's error was sufficiently prejudicial to defendant that there was a reasonable probability of a different outcome. As such a new trial was ordered.

Finally, defendant is not entitled to dismissal of his criminal charges on double jeopardy grounds, as defendant was granted a new trial solely on the basis of defense counsel's error. It has long been the rule "that neither the reversal of a conviction on appeal, nor the cessation of a trial by reason of a mistrial, bars the subsequent retrial of a criminal defendant." *Commonwealth v. Martorano,* 559 Pa. 533, 540, 741 A.2d 1221, 1224 (1999) (dissent) (citing *United States v. Dinitz,* 424 U.S. 600, 609, 96 S. Ct. 1075, 1080, 47 L.Ed.2d 267 (1976), *United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896)). Defendant cannot obtain the benefit of double jeopardy protections from his own counsel's errors at trial, for as the United States Supreme Court has noted, "it would be a high price indeed for society to pay were every accused granted immunity from punishment

because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *United States v. Tateo,* 377 U.S. 463, 84 S.Ct. 1587 (1964). Double jeopardy is not implicated by the grant of new criminal trial on the basis of defense counsel's prejudicial error.

## V. CONCLUSION

The foregoing represents this court's opinion regarding the Commonwealth's appeal from the grant of PCRA relief on the *Miranda* claim and PCRA defendant's appeal from this court's denial of the remaining PCRA claims.