912 A.2d 252

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Lawrence A. GAUL, Jr., Appellant.**

Supreme Court of Pennsylvania.

Resubmitted Aug. 22, 2006.

Decided Dec. 27, 2006.

Andrea E. Mertz, Esq., Glenn D. Welsh, Esq., Reading, for Lawrence A. Gaul, Jr.

Mark Carlyle Baldwin, Esq., Alisa Rebecca Hobart, Esq., Berks County District Attorney's Office, Reading, for Commonwealth of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## OPINION

Chief Justice CAPPY.*

In this appeal, we are asked to consider whether Appellant Lawrence A. Gaul, Jr., was subject to a custodial interrogation during a police encounter, and, thus, was entitled to *Miranda*[1] warnings. The Superior Court concluded that he was not subject to a custodial interrogation and reversed the trial court's order suppressing Appellant's statement. Because we find that the encounter amounted to a custodial interrogation, we reverse the order of the Superior Court and reinstate the order of the trial court suppressing Appellant's statement.

The facts surrounding the meeting between Appellant and the police establish that on July 4, 2003, Appellant was at the residence of his friend, Sherri Burns. At some point during the visit, Burns left Appellant alone in her living room. The next day, Burns discovered her handgun was missing from an end table in the living room and reported it stolen. The police investigated and Appellant was arrested in connection with the stolen handgun.

Appellant was taken to a detention center in Reading, Pennsylvania, where Investigator Harold T. Shenk read Appellant the criminal complaint and the affidavit of probable cause. Investigator Shenk explained to Appellant that since he was in custody, he would have to be informed of his *Miranda* rights. Investigator Shenk then asked Appellant if he wanted to discuss the pending charges, and again stated he would have to give Appellant *Miranda* warnings since he was under arrest. In reply, Appellant stated, "Off the record, I can get you the gun back, but you have got to make a deal

---

* This matter was reassigned to this author.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

with me." N.T., Pre-trial hearing, 2/4/2004, at 41. Investigator Shenk told Appellant he could not make any deals or offer any guarantees, and terminated the conversation.

Appellant filed a motion to suppress his statement to Investigator Shenk on the basis that he was subject to a custodial interrogation and that Investigator Shenk failed to give him *Miranda* warnings. Following a hearing, the trial court agreed with Appellant and granted his motion. In its Pa. R.A.P.1925 statement, the trial court explained that Appellant was in custody at the time Investigator Shenk spoke with him. The court also cited *Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394 (2001), and concluded that the encounter amounted to an interrogation when Appellant was informed of the implicative statements made by Burns. At this point, "Shenk should have known that his comments were reasonably likely to elicit an effort by [Appellant] to defend himself, offer alternative explanations, or provide a responsive statement." Trial Court opinion, 4/30/2004, at 4.

On appeal, the Superior Court reversed the trial court's decision on the basis that Investigator Shenk's "question was not the type designed to or likely to evoked an incriminating response." *Commonwealth v. Gaul*, 867 A.2d 557, 559 (Pa.Super.Ct.2005). Furthermore, Appellant's reply was a "voluntary and unresponsive utterance" made after Investigator Shenk attempted to ascertain whether Appellant understood his situation. *Id.*

This court granted allowance of appeal to consider whether the encounter between Investigator Shenk and Appellant amounted to a custodial interrogation and whether the Superior Court's opinion conflicted with this court's decision in *DeJesus.*

 Our standard of review of suppression rulings is well settled. We are bound by the factual findings of the suppression court that are supported by the record, but we are not bound by the court's conclusions of law. *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959, 961 (2002). "The determination of whether a confession is voluntary is a conclusion of

law, and as such, is subject to plenary review." *Commonwealth v. Templin*, 568 Pa. 306, 795 A.2d 959, 961 (2002). Moreover, when the Commonwealth appeals from a suppression order, we consider only the evidence of the defense together with the evidence of the Commonwealth that remains uncontradicted when read in the context of the entire record. *Commonwealth v. Nester*, 551 Pa. 157, 709 A.2d 879, 880–81 (1998).

The principles surrounding *Miranda* warnings are also well settled. The prosecution may not use statements stemming from a custodial interrogation of a defendant unless it demonstrates that he was apprised of his right against self-incrimination and his right to counsel. *DeJesus*, 787 A.2d at 401. Thus, *Miranda* warnings are necessary any time a defendant is subject to a custodial interrogation. As the United States Supreme Court explained, "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Moreover, in evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. *See Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1259 (1994).

In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings. *See, e.g., Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 720 (1998). Similarly, *Innis* does not "place the police under a blanket prohibition from informing a suspect about the nature of the crime under investigation or about the evidence relating to the charges against him." *DeJesus*, 787 A.2d at 402.

With these general principles in mind, we now turn to the specific issue raised in this case. There is no question that Appellant was in custody at the time of the interview with Investigator Shenk. Thus, the only question before us is

whether the encounter rose to the level of an interrogation or the "functional equivalent" of an interrogation, such that the *Miranda* safeguards were implicated.

In *DeJesus*, we defined interrogation as "questioning initiated by law enforcement officials." *DeJesus*, 787 A.2d at 401 (*quoting Miranda*). We also explained that the "functional equivalent" of interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 402 (*quoting Innis*).

■ We then had the opportunity to expand on what conduct amounts to the "functional equivalent" of interrogation. In performing this inquiry, we explained that under *Innis*, the court must focus on a suspect's perceptions and give relevance to the officer's constructive knowledge. *Id.* at 402. Such considerations were required by the *Innis* Court's direction that the inquiry must look at the suspect's perceptions rather than the intent of the police. *Id.* Moreover, "a practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to an interrogation." *Id.. (quoting Innis*, 446 U.S. at 301, 100 S.Ct. 1682).

Using this framework, we then considered the totality of circumstances presented in *DeJesus*, which included the police repeatedly informing DeJesus of the charges against him. The police also told DeJesus what others implicated in the crime had said about him in their statements to the police. Indeed, after over three hours, the police showed the defendant the statements that the others had made. It was at this point of the encounter that DeJesus made an incriminating statement without *Miranda* warnings.

In evaluating these circumstances, we explained that merely because the police officer's statements were intended to be informational, did not mean that they could not also have been "reasonably likely to elicit an incriminating response" from the defendant. *Id.* at 403. Rather, we concluded that focusing on

DeJesus' perceptions, when the police "explained to Appellant that he had been implicated in the shootings, telling him what the statements [the co-conspirators] had made to the police concerning his involvement, the detective should have known that his comments and conduct were reasonably likely to evoke an effort on Appellant's part to defend himself and give his own version of his involvement in the crimes at issue." *Id.*

We conclude the instant case is controlled by *DeJesus.* In this case, when Investigator Shenk explained to Appellant that he was accused of the theft and read Burns' statement implicating him, Investigator Shenk should have known that his comments were reasonably likely to evoke an incriminating response from Appellant. Investigator Shenk told Appellant that he would have to give him *Miranda* warnings on two separate occasions. The second time, Investigator Shenk acknowledged Appellant was in custody, but then asked Appellant if he wanted to discuss the pending charges and informed him that if he did, he would have to give him *Miranda* warnings. Clearly, Investigator Shenk was aware that he needed to give Appellant *Miranda* warnings before Appellant said anything, indicating his belief that Appellant was subject to an interrogation. Furthermore, when he presented Appellant with the incriminating statements made by Burns in addition to the charges against him, Investigator Shenk should have known that Appellant would want to defend himself and give his own version of his involvement in the crimes at issue. *DeJesus supra.* Accordingly, not only should Investigator Shenk have known that his comments were reasonably likely to evoke an incriminating response from Appellant, but we conclude that the totality of the circumstances indicate that Investigator Shenk almost certainly knew that his conduct was likely to evoke a response from Appellant based upon his repeated acknowledgments that he would have to give Appellant *Miranda* warnings.

While this case is distinct from *DeJesus* in certain respects, since the encounter was much shorter in length and Appellant was not repeatedly told of the charges against him, we find these to be distinctions without a difference. Such consider-

ations are relevant in determining whether the statement was involuntary or the waiver of *Miranda* rights was knowing. *See DeJesus*, 787 A.2d at 403 (explaining that the waiver of *Miranda* rights must be "the product of free and deliberate choice rather than intimidation, coercion, or deception"); *see also Commonwealth v. Watkins*, 577 Pa. 194, 843 A.2d 1203, 1213 (2003). They have limited relevance, however, to our determination of whether a police officer engaged in a practice he should have known is reasonably likely to evoke an incriminating response.

 Rather, as we explained in *DeJesus*, the linchpin of the *Miranda* analysis is the perception of the suspect and the constructive knowledge of the police. Merely because a police officer intended the encounter to be informational does not mean that it could not also constitute an interrogation. *DeJesus*, 787 A.2d at 403. Viewed in this light, there can be no doubt that Appellant was subject to the functional equivalent of an interrogation. *DeJesus supra.* Accordingly, Appellant was entitled to *Miranda* warnings at the outset of this process.

For the reasons stated herein, the order of the Superior Court is reversed and the order of the trial court suppressing the statements is reinstated.

Justice SAYLOR and BAER and Justice BALDWIN join the opinion.

Justice CASTILLE files a dissenting opinion.

Justice EAKIN files a dissenting opinion in which Justice NEWMAN joins.

Justice CASTILLE, dissenting.

I join Mr. Justice Eakin's Dissenting Opinion, but I write separately to address two overly broad assertions and determinations posited by the Majority Opinion in its discussion of whether Investigator Shenk "should have known" that his statements were reasonably likely to elicit an incriminating response from appellant. I believe that these broad assertions

and determinations amount to classic "Monday morning quarterbacking."

In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the United States Supreme Court addressed the issue of the meaning of "interrogation" under the system of prophylactic rules promulgated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The High Court concluded the following:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Innis,* 446 U.S. at 300–02, 100 S.Ct. at 1689–90 (emphasis in original) (footnotes omitted). Accordingly, the High Court announced a supposed objective test, rather than a subjective test, for the "functional equivalent" of express questioning— *i.e.,* whether the police *should have known* that their conduct was reasonably likely to elicit an incriminating response. As noted by the *Innis* Court, this objective test focuses principally on the suspect's perceptions and not on the intent of the

police. *Id.* at 301, 100 S.Ct. at 1690. Indeed, decisions from this Court since *Innis* have recognized and applied this objective test. *See, e.g., Commonwealth v. DeJesus,* 567 Pa. 415, 787 A.2d 394, 402–03 (2001); *Commonwealth v. Hughes,* 536 Pa. 355, 639 A.2d 763, 771 (1994).

In reaching the ultimate conclusion that Investigator Shenk breached appellant's constitutional rights by not providing him *Miranda* warnings prior to the imputed interrogation that produced the incriminating statement, the Majority relies on unsupported and irrelevant speculations. First, the Majority asserts that, because Investigator Shenk informed appellant on two occasions that he would have to give him *Miranda* warnings because he was in custody, this is clear evidence that Investigator Shenk believed that he was interrogating appellant. Maj. at 182, 912 A.2d at 256 ("Clearly, Investigator Shenk was aware that he needed to give Appellant *Miranda* warnings before Appellant said anything, indicating his belief that Appellant was subject to an interrogation."). The Majority's subjective determination that Investigator Shenk "clearly" believed that he was conducting an interrogation of appellant is not supported by any fact-finding below and, in any event, any would-be appellate "fact-finding" along these lines is irrelevant under *Innis/DeJesus.* Similarly, the Majority asserts that "the totality of the circumstances indicates that Investigator Shenk *almost certainly knew* that his conduct was likely to evoke a response from Appellant based upon his repeated acknowledgements that he would have to give Appellant *Miranda* warnings." *Id.* at 182, 912 A.2d at 256 (emphasis added). Again, this is both pure speculation and irrelevant under *Innis/DeJesus.* We have no idea of just what the Investigator knew as there is no evidence of record pertinent thereto. What is at issue is what the *Innis* fiction requires us to attribute to the officer. And, on that question, I join Justice Eakin's dissent. As noted above, the definition of "the functional equivalent of express questioning" as announced by the *Innis* Court is whether the police should have known that their conduct was reasonably likely to elicit an incriminating response; "almost certainly knew" is not the proper standard.

186

Justice EAKIN, dissenting.

Because I believe appellant was not subject to interrogation for *Miranda*[1] purposes, I respectfully dissent.

The majority finds *Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394 (2001), controlling here. *See* Majority at 182, 912 A.2d at 256. In that case, the police arrested DeJesus and took him to a police administration building where he was placed in an interview room. There, over about a three-hour period, a detective informed him of the charges against him and told him that others also charged with the crimes made statements incriminating him. *DeJesus*, at 400–01. DeJesus then made an incriminating statement without *Miranda* warnings. *Id.*, at 401. This Court determined that when the detective informed DeJesus he had been implicated in the shootings and told him of the content of the co-conspirators' statements concerning his involvement, the detective should have known his comments were reasonably likely to evoke a defensive response from DeJesus in which he would have provided his own version of his involvement in the case. *See id.*, at 403. Thus, providing DeJesus with the implicative statements of the co-conspirators was found to rise to the level of an interrogation, and the detective should have provided *Miranda* warnings. *Id.*, at 404.

The majority herein applies *DeJesus* and concludes that, in reading the criminal complaint and the affidavit of probable cause, which included the incriminating statement from Burns, Investigator Shenk knew he would likely elicit an incriminating response. Majority at 182, 912 A.2d at 256. The facts of the instant case share similarities with *DeJesus*. Here, Investigator Shenk did not provide appellant with *Miranda* warnings, and after informing appellant of the charges against him, he proceeded to read the affidavit of probable cause, which contained the incriminating statement by Burns.

However, the present case contains critical distinctions from *DeJesus*. The police interaction with appellant was not a

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

three-hour "interview," as in *DeJesus;* Investigator Shenk read appellant the criminal complaint and the affidavit of probable cause, and did so only once. Further, after Investigator Shenk read the complaint and affidavit, he explained that, since appellant was in custody, he would have to read appellant his *Miranda* rights. Investigator Shenk then merely asked appellant if he wanted to discuss the charges, and again stated he would give appellant *Miranda* warnings before discussing it further. At that point, appellant made an incriminating statement.

While the affidavit of probable cause informed appellant that Burns gave the police a statement incriminating him, Burns was the victim, not a co-conspirator. Learning the obvious fact that you are under arrest because the victim accuses you is qualitatively different than learning your co-conspirators are shifting blame to you. Unlike *DeJesus,* appellant did not make his incriminating statement in immediate response to learning Burns incriminated him; appellant made the response after Investigator Shenk informed him he was in custody and asked if he wanted to discuss the charges; if so, he would have to receive his *Miranda* warnings. This is not conduct that this Court should condemn as unconstitutional. Reading the charging documents, copies of which must be given to the accused anyhow, does not comprise interrogation. Telling the accused that if he wishes to discuss matters, warnings must be given, is not interrogation.

The record does not support a finding that Investigator Shenk knew his statements were reasonably likely to elicit an incriminating response from appellant. There can be no *per se* rule that informing an accused of the contents of the affidavit, or the existence of witnesses incriminating him, will comprise "interrogation" in every case; this determination is contextual. In this case, there is no reason for this Court to find a constructive interrogation in the neutral, even helpful, behavior of this officer. Thus, I would hold interrogation did not occur, and the absence of *Miranda* warnings does not render appellant's statement inadmissible. *See Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116, 1125 (2001)

188

(unsolicited, spontaneous, or voluntary remark is not result of custodial interrogation and is not subject to suppression).

Justice NEWMAN joins this dissenting opinion.