## Commonwealth v. Kennedy

*Jeffrey D. Burd, assistant district attorney,* for Commonwealth.

*John F. Baurkot,* for defendant.

ANTHONY, *J.,* February 9, 2009—The defendant is charged with possession of a controlled substance—contraband by inmate prohibited (heroin)[1] and possession of a controlled substance (heroin)[2], relative to an incident that occurred on July 23, 2008, at the men's community corrections center of the Lehigh County Prison.

The defendant, pro se, filed a motion for pretrial discovery and inspection, a petition for writ of habeas corpus/double jeopardy clause, and a motion to suppress. Subsequently, the defendant's attorney, John F. Baurkot, Esquire, deputy public defender, filed a motion to suppress. The motion filed by Attorney Baurkot alleges that the defendant was searched for drugs without a warrant,[3] was questioned about suspected drug use without being

1. 18 Pa.C.S. §5123(a.2).

2. 35 P.S. §780-113(a)(16).

3. Attorney Baurkot's motion does not specifically allege this, but he does make reference to "illegal seized heroin" in the motion.

given *Miranda* warnings, and submitted to drug testing without a warrant or other legal excuse. Defendant's counsel argues that all statements and other evidence must be suppressed.

A pretrial hearing was held on October 29, 2008. Inasmuch as the defendant was represented at the time he filed his pro se motions and petition, the same were summarily dismissed at the start of the hearing. The defendant proceeded on the motion to suppress filed by Attorney Baurkot. The Commonwealth offered the testimony of Corrections Officer Scott Holmes. The defendant did not offer any testimony or other evidence. The affidavit of probable cause attached to the criminal complaint was made part of the record.

Following oral argument, I took the defendant's motion under advisement. This opinion follows.

## FINDINGS OF FACT

Corrections Officer (C.O.) Scott Holmes, a 19-year veteran of the Lehigh County Prison's (LCP) corrections force, was assigned to the men's community corrections center (work release center) on July 23, 2008. At approximately 10:15 p.m., Holmes entered a bathroom at the work release center. While looking into a mirror, Holmes observed the defendant, fully clothed, in the corner of a stall, heard him snort something, and saw him wipe his nose. Holmes asked the defendant what he was doing, and then observed the defendant attempt to hide something in his front pocket.

Holmes asked the defendant to empty his pockets, but the defendant did not comply. Holmes again asked the

defendant to empty his pockets: this time the defendant pulled from his pocket a small, cellophane baggie with the name "Bad Boy" printed on it. The baggie was empty. Holmes took possession of the baggie, placed it in an envelope, and placed the envelope in a drop safe. The baggie was eventually delivered to Investigator Cliff Knappenberger, and was thereafter photographed and field-tested.[4]

After finding the baggie, Holmes handcuffed the defendant, escorted him to a holding cell,[5] and called for additional officers. At some point the defendant stated to Holmes "you caught me", or words to that effect. No question was before the defendant when he made this statement.[6]

Additional officers arrived and the defendant was strip-searched. No further contraband was discovered. The defendant was transported back to the main LCP facility later that evening.

All inmates who are placed in the work release center receive a handbook. On page 12 of the handbook, the inmates are advised that they are not to consume alcohol or use illegal drugs and are subject to random urinalysis and/or oral alcohol screens.[7] They are further advised

---

4. See affidavit of probable cause.

5. This is where work release residents are placed until they are sent back to the main prison.

6. C.O. Holmes testified on direct examination that he could not remember the exact words the defendant used, and that the defendant made this comment spontaneously as he was transporting the defendant. On cross-examination, Holmes stated that the defendant likely uttered these words while in the bathroom.

7. Lehigh County Department of Corrections Men's Community Corrections Center Handbook, 10/2008, p. 12. Admitted into evidence

that if drug or alcohol use is confirmed, appropriate disciplinary action shall be taken.

C.O. Holmes indicated he believed that on the following day the defendant was asked to and did submit a urine sample for analysis. Holmes believed the sample tested positive for heroin. Holmes also believed the baggie seized was analyzed, and that it too tested positive for heroin.[8]

## DISCUSSION

The defendant argues that he should have been *Mirandized* prior to any questioning, and that prison authorities should have secured search warrants prior to asking him to empty his pockets and requesting a urine sample.

### Miranda *Warnings*

*Miranda* warnings are required where an individual is subjected to custodial interrogation. *Commonwealth v. Williams*, 941 A.2d 14 (Pa.Super. 2008). Custodial interrogation includes any words or actions on the part of the police, other than those normally attendant to arrest and custody, that are reasonably likely to elicit an incriminat-

---

as Commonwealth's exhibit 1. Notably, if the urine sample was taken in the main facility the following day, it is likely it was targeted, and not random, based on what had occurred the previous day.

8. Based on the testimony of C.O. Holmes, it is clear he did not have first-hand knowledge of what happened to the defendant after he was removed to the main prison facility. The affidavit of probable cause prepared by Investigator Cliff Knappenberger states: "The substance was photographed and field tested. Also on July 24, 2008, inmate Kennedy was the subject of a urine test. Both the substance and inmate Kennedy tested positive for the drug heroin."

ing response from the individual being questioned. *Commonwealth v. Gaul,* 590 Pa. 175, 912 A.2d 252 (2006). However, "[i]t is well established in Pennsylvania that volunteered or spontaneous utterances are admissible even though the declarant was not *'Mirandized.'*" *Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711 (1998).

In this case, the record indicates that the defendant made a spontaneous statement, along the lines of "you caught me", and not in response to specific questioning by C.O. Holmes.

## *Search of Defendant and Request for Urine Sample*

The defendant also argues that a search warrant was needed to recover the contents of his pocket and to acquire a urine sample for drug testing. As to the latter, the defendant analogizes it to a situation where an individual is stopped for DUI and refuses to have blood drawn for the purpose of analysis. He argues that although the person suspected of DUI is subject to penalties, the police must still obtain a search warrant in order to draw a blood sample for analysis if the suspect refuses one.

The defendant's argument fails for two reasons. First, it assumes that the defendant refused to submit a urine sample. No evidence was offered, nor can I find any in the record, that the defendant either refused or agreed to submit a urine sample for testing. Notably, the defendant did not allege in his motion that he was compelled to submit a urine sample.

Second, it assumes that a prisoner and an individual stopped for DUI share the same constitutional freedoms. "It is a difficult balance to maintain between protection

of an individual's freedoms and the societal need for secure prisons." *Commonwealth v. Wallington,* 238 Pa. Super. 427, 430, 357 A.2d 598, 600 (1976). Prisoners' constitutional freedoms are curtailed to a degree because of the necessity of prison officials to maintain discipline. *Id.* In a prison environment, the protections afforded by the Fourth Amendment are limited "to the extent that officials may search prisoners and seize contraband or evidence of suspected criminality." *Id.* Our courts do recognize, however, that this is not meant to be an excuse for harassing prisoners and depriving them of basic freedoms. *Id.*

In this case, there is nothing to suggest that the purpose of requesting a urine sample from the defendant was to harass him. To the contrary, Holmes inadvertently walked into the work release center bathroom when the defendant was apparently using illegal drugs. Any reasonable person in the defendant's position would have known he was not to use illegal drugs, and the work release center handbook, which is provided to all inmates, clearly states this policy and advises the residents they are subject to random urinalysis.

As to the contents of the defendant's pockets, Holmes asked the defendant for the contents because he believed the defendant was hiding "contraband or evidence of suspected criminality", and again, not as a means to harass him.

## CONCLUSION

Based on the above, I find that no *Miranda* warnings were necessary prior to asking the defendant what he

was doing in the work release center bathroom, no search warrant was necessary prior to asking the defendant to empty the contents of his pocket, and no search warrant was necessary prior to requesting a urine sample from the defendant. The defendant's motion to suppress is denied.

## ORDER

And now, February 9, 2009, upon consideration of the defendant's motion to suppress, and following a hearing held on October 29, 2008,

It is ordered that the defendant's motion is denied and dismissed.