J-S10004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN LANGLEY | |
| Appellant | No. 1768 EDA 2014 |

Appeal from the Judgment of Sentence May 15, 2014
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006897-2013

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:           **FILED MARCH 04, 2016**

Appellant, Steven Langley, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his jury trial convictions for possession with intent to deliver a controlled substance ("PWID") and conspiracy, and his guilty plea to driving while operating privilege is suspended or revoked.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows:

> Officer Richard Meehl, of the Lower Makefield Township Police Department ("LMTPD"), testified that he is a county-sworn narcotics officer and has participated in hundreds of drug investigations in his six-and-a-half (6½) years as a police officer. On August 29, 2013, Officer Meehl observed

_____

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 903(c); 75 Pa.C.S.A. § 1543(b)(1), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

[Appellant] operating a black 2006 Ford Explorer in a parking lot located at 833 West Trenton Avenue, Morrisville, Bucks County, PA, which was the target of a narcotics investigation involving [co-conspirator] Craig Curry…. An undercover officer arranged to meet [Mr.] Curry at this location to purchase twenty ten[-]milligram Oxycodone pills for two-hundred and twenty-five dollars ($225.00). [Appellant] was in the driver seat of the vehicle while [Mr.] Curry was in the front passenger seat. Officer Meehl observed a transaction between the undercover officer and [Mr.] Curry and directly thereafter at approximately 11:40 a.m. he took both suspects into custody. …

Upon arrival at the LMTPD Headquarters, [Appellant] was secured with a handcuff on one wrist to a bench in the seated position in the booking area of the station. At approximately 1:13 p.m. [Appellant] was removed from this area into the detective interview room in the "Criminal Investigative Division" portion of the police station. …

Officer Meehl, along with Officer Todd Hamski (also of the LMTPD) then proceeded to interview [Appellant] regarding his arrest and, in particular, the officer asked questions "about the sources of where [Appellant] actually obtained the narcotics that were sold in this particular transaction." … During this interview, [Appellant] was handcuffed in the front. [Appellant] informed the officers that he could read and understand the English language.

[Appellant] was read his ***Miranda***[2] rights from a standard ***Miranda*** waiver form verbatim. Following the recital of each and every entry of the waiver form, [Appellant] verbally responded that he understood his rights. … After being read the ***Miranda*** waiver form and reading the form to himself, [Appellant] agreed to speak with the officers.

[Appellant] indicated that on the date and time in question he was taking [Mr.] Curry to view a truck that was for sale in the Advance Auto Parts parking lot, although he

---

[2] ***Miranda v. Arizona***, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

suspected that [Mr.] Curry was involved in a drug transaction. The officers had spoken to [Mr.] Curry prior to this interview and, therefore, they confronted [Appellant] with [Mr.] Curry's differing version of events, in which he stated that [Appellant] provided him with the pills involved in the transaction with the undercover officer for fifty dollars ($50) compensation. Upon hearing this, [Appellant] told [the] officers he "didn't have anything else to say." This concluded the interview, which took approximately fifteen (15) minutes.

Officer Meehl testified that at no point during his time at the LMTPD did [Appellant] request any medical assistance. Further, [Appellant] was not physically abused or threatened during the interview. He was given water upon request and used the facilities. [Appellant] did not appear under the influence of any drugs or alcohol and the tone of the interview was conversational.

After the interview, Appellant was returned to the booking room, approximately thirty (30) feet away from the interview room. [Mr.] Curry was also present in the booking room at this time. While [Appellant] was being processed, he began to inquire as to what was going to happen to him in terms of sentencing and to his wife's truck which he had operated on this date and that was then in the custody of police. Officer Meehl testified: "I just said to [Appellant] the best thing that he could do is cooperate. And I think I again stated, you know, Curry, you know, told us exactly what happened and you have yet to be honest with us." Furthermore, Officer Meehl informed [Appellant] that he and Officer Hamski (who was also present in the booking room) were not prosecutors and, therefore, could not make any recommendations as to sentence. [Mr.] Curry then directed towards [Appellant]: "Listen, we are both in this together, we have to be honest and tell them exactly what happened." According to Officer Meehl, [Mr.] Curry "spoke up on his own, nobody…asked him for his input."

Upon hearing this, [Appellant] then made inculpatory statements admitting the pills were his and that he was going to give [Mr.] Curry fifty dollars…for setting up the deal. Officer Meehl asked [Appellant] to provide a written

- 3 -

statement of these remarks and gave him a pen and the standard department statement form. Officer Meehl read the statement back to [Appellant] to ensure that it was correct and gave him an opportunity to review the statement prior to the signing and adoption of it by [Appellant]. Appellant's written statement reads as follows, verbatim: "give neighbor a ride to go look at a truck. The pills were mind [*sic*] and Craig set it up. Was going him $50. Give him 20 pills." This series of events occurred at approximately 1:45 p.m., less than a half-hour after [Appellant] was read his ***Miranda*** rights in the interview room.

After [Appellant] wrote his statement out, he awaited his video arraignment on the bench in the booking room for approximately twenty (20) to thirty (30) minutes until the proper paperwork was completed. … [During the video arraignment, Magisterial] District Justice Burns ("MDJ") informed [Appellant] that he had the right to remain silent. In order to make the determination as to what bail would be appropriate, [the MDJ] asked [Appellant] about his employment, how long he had been in the community, and Officer Meehl's recommendation on bail. Thereafter, [the MDJ] asked [Appellant] if he had "anything else to say" before bail was set. Appellant responded that "the reason he sold the drugs that day was to pay a bill."

(Trial Court Opinion, filed April 28, 2015, Exhibit A at 1-6) (footnotes and internal citations to the record omitted). On March 17, 2014, Appellant filed a motion to suppress his oral statements to the police and to the MDJ. The trial court denied the motion on March 18, 2014. On that same date, Appellant pled guilty to the charge of driving while operating privilege is suspended or revoked. Following a one-day trial, a jury convicted Appellant on March 19, 2014, of PWID and conspiracy. On May 15, 2014, the court sentenced Appellant to a term of thirty (30) to sixty (60) months' incarceration for PWID, followed by two (2) years' probation for conspiracy,

plus a concurrent term of sixty (60) days' incarceration for driving while operating privilege is suspended or revoked. Appellant filed a timely notice of appeal on June 12, 2014. On June 17, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant filed an initial Rule 1925(b) statement on June 27, 2014. Appellant subsequently filed with this Court a motion for remand to file an amended Rule 1925(b) statement. This Court granted the motion on April 15, 2015, and Appellant filed an amended Rule 1925(b) statement on April 21, 2015.

Appellant raises the following issue for our review:

> DID THE [TRIAL] COURT ERR IN FAILING TO SUPPRESS APPELLANT'S ORAL AND WRITTEN STATEMENTS AND SUBSEQUENT STATEMENT TO THE [MDJ] WHERE THE EVIDENCE ESTABLISHED AT SUPPRESSION THAT AFTER BEING ADVISED OF HIS ***MIRANDA*** RIGHTS AND HAVING GIVEN A NON-INCULPATORY ORAL STATEMENT, APPELLANT ASSERTED HIS RIGHT TO REMAIN SILENT WHICH WAS NOT HONORED BY POLICE WHO THEN INTENTIONALLY ELICITED INCRIMINATING ORAL AND WRITTEN STATEMENTS FROM APPELLANT WITHOUT AGAIN ADVISING APPELLANT OF HIS RIGHTS TO COUNSEL AND TO REMAIN SILENT[?]

(Appellant's Brief at 7).

Appellant argues Officer Meehl improperly reopened interrogation of Appellant after he had invoked his right to remain silent. Appellant contends Officer Meehl's remarks encouraging Appellant to "cooperate" were intended to elicit a confession despite Appellant's unequivocal termination of a ***Mirandized*** interrogation only thirty minutes earlier. Appellant claims his

questions to Officer Meehl—regarding Appellant's likely sentence and what would happen to his wife's car—did not suggest that Appellant wanted to discuss the facts of the incident again. Appellant maintains Officer Meehl nevertheless took the opportunity to persuade Appellant to confess. Appellant also rejects the trial court's reasoning that his oral confession was admissible because he volunteered it after Craig Curry, not the police, had urged him to do so. Appellant asserts Mr. Curry would not have directed his comments at Appellant absent Officer Meehl's initial call for cooperation, which Mr. Curry simply echoed. Appellant concludes the trial court should have suppressed his inculpatory statements. We disagree.

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Williams, H.*, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted).

Statements made during custodial interrogation are presumptively involuntary, unless the police first inform the accused of his *Miranda* rights.

*Commonwealth v. DiStefano*, 782 A.2d 574 (Pa.Super. 2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda, supra* at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at ___. "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. Gaul*, 590 Pa. 175, 180, 912 A.2d 252, 255 (2006), *cert. denied*, 552 U.S. 939, 128 S.Ct. 43, 169 L.Ed.2d 242 (2007). Whether a person is in custody depends on "whether the person is physically denied [his] freedom of action in any significant way or is placed in a situation in which [he] reasonably believes that [his] freedom of action or movement is restricted by the interrogation." *Williams, H., supra* at 30-31 (quoting *Commonwealth v. Williams, A.C.*, 539 Pa. 61, 74, 650 A.2d 420, 427 (1994)). "[I]nterrogation includes express questioning as well as words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating statement." *Commonwealth v. Abdul-Salaam*, 544 Pa. 514, 532, 678 A.2d 342, 351 (1996).

"[T]he protective provisions of *Miranda* prohibit the continued interrogation of an interviewee in police custody once he…has invoked the right to remain silent and/or to consult with an attorney." *Commonwealth*

*v. Bess*, 789 A.2d 757, 762 (Pa.Super. 2002).  Nevertheless,

> Subsequent police questioning after the invocation of a defendant's right to remain silent is not a *per se* violation of that right.  Rather, the police may attempt to question a defendant a second time after the defendant's initial invocation of [his] right to remain silent in order to determine if the defendant wishes to speak further to the police voluntarily, where the police "scrupulously honor" the defendant's initial invocation of the right to remain silent.  The question of whether the police have "scrupulously honored" the defendant's right to remain silent focuses on the following considerations: (1) whether the defendant was advised of [his] *Miranda* rights before both interrogations; (2) whether the officer conducting the first interrogation immediately ceased the questioning when the defendant expressed his desire to remain silent; and (3) whether the second interrogation occurred after a significant time lapse, and whether it was conducted in another location by another officer.

*Commonwealth v. Russell*, 938 A.2d 1082, 1090-91 (Pa.Super. 2007), *appeal denied*, 598 Pa. 766, 956 A.2d 434 (2008) (internal citations omitted).  *Accord Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (holding admissibility of statements obtained after suspect in custody has decided to remain silent depends on whether suspect's right to cut off questioning was "scrupulously honored").  Additionally, "Where an interviewee elects to give an inculpatory statement without police interrogation, …the statement is 'volunteered' and not subject to suppression, notwithstanding the prior invocation of rights under *Miranda*."  *Bess, supra* at 762.  *See also Commonwealth v. Bracey*, 501 Pa. 356, 461 A.2d 775 (1983) (explaining spontaneously volunteered statement is admissible notwithstanding prior assertion of constitutional

rights).

Instantly, Officers Meehl and Hamski read Appellant his ***Miranda*** rights after they took him into custody and placed him in an interview room at the police headquarters. Appellant verbally confirmed that he understood his rights and agreed to speak with the officers. The officers questioned Appellant for approximately fifteen minutes. Appellant said he "didn't have anything else to say" when the officers confronted him with Mr. Curry's statement incriminating Appellant. The officers immediately ceased questioning Appellant and returned him to the booking room to be processed. Mr. Curry was also present in the booking room. Appellant then initiated conversation with Officer Meehl. Appellant asked what was going to happen to his wife's truck, which Appellant had been operating when he was apprehended, and what he could expect in terms of sentencing. Officer Meehl responded that he and Officer Hamski were not prosecutors so they could not make any sentencing recommendations, but the best thing Appellant could do was cooperate. Officer Meehl added, "Curry, you know, told us exactly what happened and you have yet to be honest with us." Appellant did not respond. Mr. Curry then told Appellant, "Listen, we are both in this together, we have to be honest and tell them exactly what happened." At that point, Appellant admitted he supplied the pills sold to the undercover officer, and had agreed to pay Mr. Curry $50.00 for arranging the transaction.

At the time the police brought Appellant into the booking room, he had unequivocally invoked his right to remain silent. Nevertheless, Appellant voluntarily initiated a new conversation with Officer Meehl. Officer Meehl's remarks on the beneficial consequences of cooperation were responsive to Appellant's spontaneous inquiry regarding his possible sentence, and they ended there. Without any prompting from the officers, Mr. Curry then encouraged Appellant to tell the truth about the incident. Appellant admitted his involvement in the drug deal only when Mr. Curry had urged him to do so. The trial court credited Officer Meehl's testimony that Mr. Curry spoke up of his own accord. There is no evidence that Mr. Curry was acting on behalf of the police, or that Officer Meehl knew or should have known his response to Appellant would lead Mr. Curry to encourage Appellant to confess. Thus, Appellant's oral confession to the police was not the product of a custodial interrogation. No **Miranda** violation occurred because Appellant volunteered that statement. **See Bracey, supra**; **Bess, supra**. Therefore, Appellant's oral statement to the police was admissible.[3]

_____

[3] We also observe Appellant's motion to suppress did not specifically object to the admission of his written statement to the police. **See** Motion to Suppress, filed 3/17/14 (referring to "oral statements"). Therefore, Appellant waived any challenge to the admission of that statement. **See** Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal).

Moreover, the Commonwealth produced overwhelming evidence of Appellant's guilt at trial, including the remarkably consistent testimony of
_(Footnote Continued Next Page)_

Consequently, Appellant's subsequent, freely-made incriminating statement to the MDJ was likewise admissible and not "fruit of the poisonous tree." Accordingly, we affirm.

Judgment of sentence affirmed.

_(Footnote Continued)_ _____

three witnesses: (1) Officer Hamski testified that he worked undercover to arrange a drug deal with Craig Curry in an Advance Auto Parts parking lot; Appellant drove the SUV into the parking lot with Mr. Curry sitting in the passenger seat; Mr. Curry exited the SUV and approached Officer Hamski, who was in a vehicle less than ten feet away; Officer Hamski handed "buy money" to Mr. Curry, who immediately turned around and gave it to Appellant; Mr. Curry then gave Officer Hamski a bottle containing twenty Oxycodone pills; (2) Officer Meehl testified that he conducted surveillance on the drug transaction between Officer Hamski and Mr. Curry; Officer Meehl observed Appellant drive the SUV into the parking lot, where Mr. Curry exited the vehicle and approached Officer Hamski; Officer Hamski signaled when the transaction was completed, at which point several officers moved in and arrested Appellant and Mr. Curry; Officer Meehl searched Appellant and recovered from his pants pocket a bottle containing pills identical to those supplied by Mr. Curry in the exchange with Officer Hamski; in a statement to Officer Meehl, Mr. Curry explained he made a deal with Appellant whereby Mr. Curry would receive $50.00 for arranging the drug sale and Appellant would keep the remaining $175.00; (3) Mr. Curry testified that Appellant supplied the Oxycodone pills used in the drug sale; Appellant agreed to pay Mr. Curry $50.00 for arranging the sale; Appellant drove Mr. Curry to the parking lot, where Mr. Curry gave the pills to Officer Hamski in exchange for $225.00; Mr. Curry handed the money to Appellant after receiving it. Thus, even if the police had induced any of Appellant's oral or written statements in violation of **_Miranda_**, we would conclude their admission was harmless error. **_See Commonwealth v. Snyder_**, 60 A.3d 165 (Pa.Super. 2013), _appeal denied_, 620 Pa. 731, 70 A.3d 811 (2013) (holding erroneous admission of defendant's incriminating statements was harmless error in light of overwhelming nature of Commonwealth's evidence).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2016