J. S10045/20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 786 MDA 2019 |
| | : | |
| NEIL HOWARD GOLDSTEIN | : | |

Appeal from the Order Entered April 18, 2019,
in the Court of Common Pleas of Lebanon County
Criminal Division at No. CP-38-CR-0001440-2018

BEFORE:  PANELLA, P.J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JUNE 15, 2020**

The Commonwealth appeals[1] from the April 18, 2019 order granting the

*omnibus* pre-trial suppression motion filed by appellee, Neil Howard

Goldstein.  After careful review, we affirm.[2]

The suppression court summarized the relevant facts of this case as

follows:

> On February 23, 2018, [Pennsylvania State] Trooper
> [Peter] Conforti responded to [a residence] in
> Lebanon County, in response to a report from a minor
> child and her mother regarding the minor child's
> alleged receipt of unwanted Snapchat messages.  The
> minor child accused [appellee] of contacting her for
> inappropriate reasons.  [The minor child (hereinafter,

---

[1] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the suppression court's April 18, 2019 order will terminate or substantially handicap the prosecution.

[2] Appellee has not filed a brief in this matter.

> "the victim") was between 15 and 16 years old at the time of these alleged incidents and was related to appellee.] Trooper [Daniel] Womer and Trooper Conforti interviewed [appellee] on March 1, 2018 at the Jonestown Police Barracks. Before beginning the interview, neither Trooper Womer nor Trooper Conforti, nor any other officer advised [appellee] of his **Miranda**[3] rights. During the interview, [appellee's] cellphone was seized without a warrant. [A warrant was subsequently obtained to analyze the contents of appellee's phone more than a month later, on April 5, 2019.]

Suppression court opinion, 7/10/19 at 3; **see also** notes of testimony, 4/17/19 at 7, 21.

On October 2, 2018, appellee was charged with criminal solicitation to commit sexual abuse of children, unlawful contact with minor, criminal use of a communication facility, corruption of minors, and tampering with or fabricating physical evidence.[4] On November 9, 2018, appellee filed an **omnibus** pre-trial motion to suppress the incriminating statements he made to Troopers Womer and Confroti and argued that they illegally seized his cell phone in violation of the Fourth Amendment. (**See** "Motion for Suppress Evidence," 11/9/18 at §§ A-B.) On April 17, 2019, the suppression court conducted a hearing on appellee's suppression motion, during which both Troopers Womer and Confroti testified. Following the hearing, the suppression court granted appellee's suppression motion on April 18, 2019. This timely

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

[4] 18 Pa.C.S.A. §§ 902(a), 6318(a)(5), 7512(a), 6301(a)(1)(i), and 4910(1), respectively.

appeal followed. Although not ordered to do so, the Commonwealth filed its concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), on May 23, 2019. The suppression court filed its Rule 1925(a) opinion on July 10, 2019.

The Commonwealth raises the following issues for our review:

A. Did the [suppression] court commit reversible error when it granted [appellee's] request to suppress the statements he made to the Pennsylvania State Police?

B. Did the [suppression] court commit reversible error when it determined that the Pennsylvania State Police needed a search warrant to seize [appellee's] cellphone?

C. Did the [suppression] court commit reversible error when it granted [appellee's] request to suppress the contents of [appellee's] cell phone?

Commonwealth's brief at 4 (extraneous capitalization omitted).[5]

Our standard of review in addressing a suppression court's order granting a suppression motion is well settled.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are

---

[5] In the "Argument" section of its brief, the Commonwealth has condensed its three issues into two primary arguments: A. and B./C. We will address each accordingly.

not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain **de novo** review over the suppression court's legal conclusions.

**Commonwealth v. Korn**, 139 A.3d 249, 253-254 (Pa.Super. 2016) (internal citations and quotation marks omitted), **appeal denied**, 159 A.3d 933 (Pa. 2016).

### Issue A.

The Commonwealth first argues that the suppression court erred in granting appellee's motion to suppress the incriminating statements he gave to the troopers because their interview with appellee did not constitute a custodial interrogation, and thus, "**Miranda** warnings were not required." (Commonwealth's brief at 10.)  We disagree.

A custodial interrogation for purposes of **Miranda** occurs when there is a "questioning initiated by the police after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." **Commonwealth v. Clinton**, 905 A.2d 1026, 1032 (Pa.Super. 2006) (citations and emphasis omitted), **appeal denied**, 934 A.2d 71 (Pa. 2007). In determining whether police conduct is the functional equivalent of interrogation, this court has noted that,

> [t]he police officer's subjective intent does not govern the determination but rather the reasonable belief of the individual being interrogated.  . . .  The standard

is an objective one, with due consideration given to the reasonable impression conveyed to the person being interrogated. A person is considered to be in custody for the purposes of **Miranda** when the officer's show of authority leads the person to believe that [he] was not free to decline the officer's request, or otherwise terminate the encounter.

**Commonwealth v. Harper**, ___ A.3d ___, 2020 WL 1516934, at *4 (Pa.Super. March 30, 2020) (citations omitted). Thus, "the inquiry must look **at the suspect's perceptions rather than the intent of the police.**" **Commonwealth v. Gaul**, 912 A.2d 252, 255 (Pa. 2006) (citation omitted; emphasis added), **cert. denied**, 552 U.S. 939 (2007).

Although we are mindful of the fact that "not every statement made by an individual during a police encounter constitutes an interrogation," **Commonwealth v. Page**, 59 A.3d 1118, 1131 (Pa.Super. 2013) (citation omitted), **appeal denied**, 80 A.3d 776 (Pa. 2013), it is undisputed that "[a] law enforcement officer **must** administer **Miranda** warnings prior to custodial interrogation." **Commonwealth v. Schwing**, 964 A.2d 8, 11 (Pa.Super. 2008) (citation omitted; emphasis added).

It is a fundamental precept enshrined in the United States Constitution that a suspect subject to a custodial interrogation by police must be warned that he has the right to remain silent, that anything he says may be used against him in court, and that he is entitled to the presence of an attorney.

**Commonwealth v. Cruz**, 71 A.3d 998, 1003 (Pa.Super. 2013) (citation omitted), **appeal denied**, 81 A.3d 75 (Pa. 2013).

> Police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.
>
> The factors a court utilizes to determine, under the totality of the circumstances, whether a detention has become so coercive as to constitute the functional equivalent of arrest include: the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions.

*Commonwealth v. Baker*, 24 A.3d 1006, 1019-1020 (Pa.Super. 2011) (citations omitted), *affirmed*, 78 A.3d 1044 (Pa. 2013).

Instantly, we discern no abuse of discretion on the part of the suppression court in concluding that appellee was subject to a custodial interrogation during his interview with Troopers Womer and Conforti, such that he was entitled to receive *Miranda* warnings. The record establishes that on the evening of March 1, 2018, Trooper Conforti contacted appellee by telephone and requested that he come to the Jonestown Police Barracks for an interview. (Notes of testimony, 4/17/19 at 5, 24-25.) During this telephone call, Trooper Conforti identified himself as a member of the Pennsylvania State Police and explained that the reason why he was calling was an ongoing criminal investigation involving the victim. (*Id.* at 24-25.) Trooper Conforti testified that he did not recall whether he specifically instructed appellee that he was required to attend the interview, nor whether

appellee informed him that he was unable to attend that evening because he was helping a friend move. (**Id.** at 25-27.) Nonetheless, appellee arrived at the Jonestown Police Barracks on his own accord and was escorted into an interview room by both Troopers Womer and Conforti. (**Id.** at 5-6, 27.) During the ensuing interview, appellee was seated directly across from Troopers Womer and Conforti, and the exit door of the interrogation room was shut for what both troopers characterized as "privacy reasons." (**Id.** at 6, 23.) The record further reflects that this interview lasted approximately an hour, during which time Trooper Conforti was dressed in full uniform with his sidearm visible, and Trooper Womer was dressed in a suit. (**Id.** at 17, 23.) Both Troopers Womer and Conforti testified that they instructed appellee he was free to leave multiple times and claim they never threatened or coerced appellee. (**Id.** at 6, 8, 32.) Notably, however, only the first 25 minutes of the interview were recorded due to a mechanical problem with Trooper Womer's recorder. (**Id.** at 4.)

During the suppression hearing, the following exchange took place during the suppression court's examination of Trooper Womer:

> BY THE COURT:
>
> Q. Trooper Womer, why was this guy called into your station?
>
> A. There was [sic] inappropriate messages being sent to his niece, who is the victim.
>
> Q. So you already knew that?

> A. Yes.
>
> Q. You knew there was some probable criminal conduct afoot; is that correct?
>
> A. Yes.
>
> Q. Why wouldn't you **Mirandize** him?
>
> A. Again, he wasn't in custody.
>
> Q. He wasn't in custody? He was at the State Police barracks with the door closed. You and who else was in the room?
>
> A. Trooper Conforti.
>
> Q. Two troopers are in the room, and that's not custody?
>
> A. He wasn't under arrest.
>
> Q. Oh, my gosh. . . .

*Id.* at 15-16.

The suppression court also examined Trooper Conforti at the suppression hearing, during which the following exchange took place:

> BY THE COURT:
>
> Q. Trooper, how much earlier than this interview did you talk to the victim in this matter?
>
> . . . .
>
> A. Let me get an exact date. It would have been February 23rd that I spoke to her.
>
> Q. Her. And then when did you speak to [appellee]?
>
> A. March 1st.

Q. So you had all of that time. You knew -- the victim told you his name, who he was, everything, right, when you talked to her, I'm assuming?

A. They had suspicion that it was him.

Q. I mean, when you say, "they had a suspicion," they told you his name.

A. Yes.

Q. You knew all of that, why are you calling him in there to just put the fine tuning on it? Why didn't you give him his *Miranda* rights?

A. It was a non-custodial interview.

Q. That's what you say. I'll make that determination. But you knew all of this stuff, yet you call him back there in the back room with two troopers, closed door, you already knew his name; you know what the allegations are; and you don't give him *Miranda*. Right?

A. Right.

Q. Why?

A. To us, he wasn't under arrest at that time.

Q. To you. Why was he there?

A. To talk to us.

Q. But you told him to come in and talk to you.

A. Right.

Q. Oh, my God. Step down.

*Id.* at 33-35.

Based on the foregoing, we agree with the suppression court that under the totality of the circumstances, a reasonable person in appellee's position would not have believed that he was free to terminate the interview and leave the interrogation room.

Moreover, as the suppression court set forth in its opinion,

> Further, the Court concluded that "interrogation" of [appellant] had taken place in Jonestown Police Barracks. Specifically, during "roughly an hour" of [appellant's] "interview," both police officers were asking [appellant] questions regarding his communications with the victim and his use of the cellphone. Questioning of [appellant], according to the testimony of the officers, was in spite of the ongoing criminal investigation. In light of the officers' experience in the field, the Court finds that police should have known that questions directed at [appellant] were more than likely to produce an incriminating response, thus constituting "interrogation." . . . No evidence on the record indicates that [appellant] volunteered his statements to police because his answers were direct responses to the officers' questions.

Suppression court opinion, 7/10/19 at 7-8.

Accordingly, we find that *Miranda* warnings were warranted in this instance and the Commonwealth's claim to the contrary must fail.

**Issues B./C.**

The Commonwealth next argues that the suppression court erred in suppressing the contents of appellee's cell phone on the basis the phone was

improperly seized by Troopers Womer and Conforti during the interview without a search warrant.  (Commonwealth's brief at 14.)

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures."  ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation marks omitted), ***appeal denied***, 987 A.2d 158 (Pa. 2009).  "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated exceptions."  ***Commonwealth v. McCree***, 924 A.2d 621, 627 (Pa. 2007). One such exception is the exigent circumstances exception.  Exigent circumstances arise only where "the need for prompt police action is imperative, either **because the evidence sought to be preserved is likely to be destroyed or secreted from investigation**, or because the officer must protect himself from danger. . . ."  ***Commonwealth v. Lee***, 972 A.2d 1, 5 (Pa.Super. 2009) (citation omitted; emphasis added).

Here, the Commonwealth avers that there existed exigent circumstances sufficient to justify the warrantless seizure of appellee's cell phone during the interview because there was a high probability that appellee would have deleted incriminating evidence had they taken the time to obtain a warrant.  (Commonwealth's brief at 16-17.)  In support of this contention, the Commonwealth notes that appellee acknowledged to

Trooper Womer that he had previously attempted to delete Snapchat messages and that his email account was set up to delete every 24 hours. (*Id.*) Specifically, Trooper Womer testified as follows:

> Q. During your interview with [appellee], did he mention at all whether or not before coming in to meet with you if he had attempted to delete things?
>
> A. Yes. He mentioned that -- he mentioned that he got the e-mail from some unknown sender, that his G-mail is set up to delete every 24 hours. He also mentioned that he tried to delete the Snapchats.
>
> Q. Was there an intent or a plan to analyze this phone as part of the course of this investigation?
>
> A. Yes.
>
> Q. Was there any concern on your end that if he were allowed to leave with his phone that day, that he may have been able to destroy more evidence or delete more evidence?
>
> A. Yes.

Notes of testimony, 4/17/19 at 7.

Contrary to the Commonwealth's contention, our review of the record reveals ample support for the suppression court's determination that there existed insufficient evidence of exigency to justify the troopers' warrantless seizure of appellee's cell phone during the interview. As the suppression court properly found in its opinion,

> after the officers removed the cellphone from [appellee's] possession during the interview, their particularized concerns that he might break the phone

- 12 -

> or otherwise destroy the phone must have been substantiated with evidence on the record. The record reveals that an alleged communication between [appellee] and the victim occurred via Snapchat, for which the Commonwealth had submitted a preservation of data request. In light of this evidence, the [suppression c]ourt did not find that [appellee's] automatic deletion of incoming Gmail mail every 24 hours was a sufficient reason for the warrantless seizure since *inter alia* no evidence was presented that [appellee's] Gmail account was used in communication with the victim or that it was causally connected to the investigation. [Trooper] Womer testified that [appellee] told him during the interview that he tried to delete Snapchats. In light of the fact that the Commonwealth had submitted a data preservation request and was in possession of the needed electronic data, the [suppression c]ourt did not find it sufficient to justify a warrantless seizure.

Suppression court opinion, 7/10/19 at 10.

The Commonwealth relies, in part, on this court's decision in *Commonwealth v. Stem*, 96 A3d 407 (Pa.Super. 2014), wherein a panel of this court recognized that "the police constitutionally were permitted to seize and secure [a] telephone[] in order to prevent the destruction of evidence **during the time it takes to obtain a valid search warrant**." *Id.* at 411 (citation omitted; emphasis in original). However, even assuming the exigent circumstances exception was satisfied sufficient to justify the troopers' warrantless seizure of appellee's cell phone, it logically follows that a valid search warrant must be obtained within a reasonable amount of time. Here, the record reflects that Troopers Womer and Conforti failed to obtain a warrant for the contents of appellee's cell phone within a reasonable amount of time.

Although the troopers seized appellee's cell phone at the conclusion of the March 1, 2018 interview, they did not request a search warrant to examine the contents of said phone until more than a month later, on April 5, 2018. (*See* notes of testimony, 4/17/19 at 35.) Moreover, neither Trooper Womer nor Trooper Conforti offered any explanation at the suppression hearing as to the cause of this delay. Rather, Trooper Womer testified on this matter as follows:

> Q.  So in an hour you couldn't get a warrant for this cell phone?
>
> A.  If we are both in the same room with him, who is going to get the warrant?
>
> Q.  How many troopers were there at the barracks at this time?
>
> A.  I don't know.
>
> . . . .
>
> Q.  No one else was available to get a warrant; is that correct?
>
> A.  That we would have explained, no.

*Id.* at 17, 18.

Based on the foregoing, we discern no legal error on the part of the suppression court in suppressing the contents of appellee's cell phone following its warrantless seizure by Troopers Womer and Conforti. Accordingly, we affirm the April 18, 2019 order granting appellee's ***omnibus*** pre-trial suppression motion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/15/2020