J-S87022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES RICHARD ARMSTRONG | |
| Appellant | No. 871 MDA 2016 |

Appeal from the Judgment of Sentence Dated April 25, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002999-2015

BEFORE: LAZARUS, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED FEBRUARY 14, 2017**

Appellant, James Richard Armstrong, appeals from the judgment of sentence of 3-23 months' incarceration followed by 3 years' probation after his conviction at a stipulated bench trial for driving under the influence ("DUI") of a controlled substance that impaired his ability to drive (second offense), of a controlled substance under Schedule I of the Controlled Substance, Drug, Device and Cosmetic Act (second offense), and of a metabolite of a controlled substance (second offense)[1]; he also was convicted for violations of traffic laws limiting driving on the left side of a road, requiring drivers to stop at stop signs, and requiring the use of turn

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(2), 3802(d)(1)(i), and 3802(d)(1)(iii), respectively.

signals.[2]  With this appeal, appellate counsel has filed a petition to withdraw and an **_Anders_**[3] brief, stating that the appeal is wholly frivolous.  After careful review, we affirm and grant counsel's petition to withdraw.

The facts underlying this appeal are as follows.  On May 15, 2015, Officer Cramer was dispatched by the Southern Regional Police Department after receiving a report at about 11:00 A.M. of a reckless driver in a cream-colored Toyota Celica on Danville Pike in Pequea Township, Lancaster County.  N.T. at 10-13; Stipulation, 4/25/16, at 1 ¶ 2a.  After locating the reported vehicle, Officer Cramer noticed that it was speeding and swerving abruptly and that it failed to use a turn signal, failed to stop at a stop sign, and crossed the yellow line at least eight times.

Officer Cramer stopped the Toyota and approached the vehicle.  N.T. at 13-15.  The officer then observed that the driver, Appellant, had bloodshot, glassy eyes, and slurred speech.  Appellant "fumbled" through papers, gave the officer an expired registration and insurance card, and then rummaged through papers again before locating the correct registration and insurance card.  Throughout this interaction, Appellant "was rambling on and on and on."  **_Id._** at 15.

---

[2] 75 Pa.C.S. §§ 3306(a)(1), 3323(b), and 3334(b), respectively.

[3] **_Anders v. California_**, 386 U.S. 738 (1967).

Officer Cramer asked Appellant to exit the vehicle, and Appellant swayed as he stood. N.T. at 16. The car door hit Appellant as he exited. Appellant then told the officer that he had consumed Soma and Xanax. *Id.*[4]

Officer Cramer instructed Appellant to do a number of field sobriety tests, all of which he failed. N.T. at 17-25. The field sobriety tests were conducted on land with a "very very slight slant." *Id.* at 34. Officer Cramer then arrested Appellant and transported him to Lancaster Regional Medical Center for a blood test. *Id.* at 25.

At the hospital, Officer Cramer and Appellant were met by Officer Redinger, who read the *O'Connell* warnings[5] to Appellant before his blood was drawn. Ex. Commonwealth-1 (DL-26 form); N.T. at 26-28. Officer

---

[4] Soma is a muscle relaxer and sedative that has significant impairing effects on a person's ability to operate a motor vehicle. Stipulation, 4/25/16, at 4 ¶ 16. Xanax is a central nervous system depressant used to treat anxiety and depression. Its side effects include drowsiness, fatigue, and dizziness, and it may result in significantly impaired driving. *Id.* at ¶ 10.

[5] *Commonwealth of Pa., Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

> [T]he court [in *O'Connell*] held that when a motorist is requested to submit to chemical testing under the provisions of the Pennsylvania Implied Consent Law, 75 Pa.C.S. § 1547, the law enforcement officer making the request has a duty to explain to the motorist that the rights provided by the United States Supreme Court decision in *Miranda v. Arizona*, 384 U.S. 436 . . . (1966), are inapplicable to a request for chemical testing under the Implied Consent Law.

*Commonwealth v. Scott*, 684 A.2d 539, 541 n.1 (Pa. 1996).

- 3 -

Redinger also gave Appellant *Miranda* warnings[6] prior to interviewing him. Ex. Commonwealth-2 (*Miranda* warnings waiver form); N.T. at 49.

On May 30, 2015, the National Medical Services Laboratory ("NMS") in Willow Grove, Pennsylvania, received a sealed package containing Appellant's blood. Stipulation, 4/25/16, at 3 ¶¶ 6, 8. On June 11, 2015, Dr. Edward Barbieri, an expert in pharmacology, toxicology, and forensic toxicology, tested Appellant's blood for controlled substances. Ex. Commonwealth-5 (Dr. Barbieri's curriculum vitae); Stipulation, 4/25/16, at 3 ¶¶ 7-9. Dr. Barbieri issued a report detailing that his analysis of Appellant's blood found Xanax, marijuana,[7] THC,[8] Soma, and a Soma metabolite. Ex. Commonwealth-6 (NMS lab report); Stipulation, 4/25/16, at 3 ¶¶ 9a-e.

As of the date of his arrest, Appellant was already serving probation for a DUI conviction[9] in York County from 2012.[10] On May 26, 2015, the

_____

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7] Marijuana was a Schedule I hallucinogen that had not yet been legalized for medicinal usage in Pennsylvania as of the date of the events at issue. Stipulation, 4/25/16, at 4 ¶¶ 11-12.

[8] THC is a marijuana metabolite. Stipulation, 4/25/16, at 3 ¶ 9c.

[9] The conviction was for driving after "imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven," in violation of 75 Pa.C.S. § 3802(c) (first offense).

[10] Because Appellant had violated his York County probation three times, he was still on probation in May 2015 for the 2012 offense. The records from
*(Footnote Continued Next Page)*

York County court issued a detainer for Appellant. On August 25, 2015, the York County court sentenced Appellant to confinement for time served for violating his probation by driving under the influence on the May 15, 2015 occasion that is subject to the charges at issue here. N.T. at 3.

In this case, trial counsel filed an omnibus pretrial motion on October 9, 2015, that included a suppression motion challenging the probable cause to arrest Appellant. A suppression hearing was held on April 25, 2016. At the beginning of the hearing, trial counsel requested a continuance, because Appellant had "an investigation open with the York County Probation, as he was violated for this particular case, he believes wrongfully." N.T. at 3. Trial counsel asked that proceedings in this action be continued until that investigation was complete. *Id.* at 4. When the trial court asked if "an investigation of York County's Probation's Department [would] have an impact in this case," trial counsel responded that "the only real issue is [whether Appellant] has time credit" in the current case, if the York County investigation resolved in his favor. *Id.* The Commonwealth opposed the continuance request. *Id.* at 6. The trial court denied the

*(Footnote Continued)* ───────────────

the York County case are not in the certified record, but this Court can take judicial notice of the proceedings reflected in the York County docket sheets at Docket No. CP-67-CR-0000588-2013. *See Spanier v. Freeh*, 95 A.3d 342, 348 (Pa. Super. 2014); *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa. Super. 2007); *Commonwealth v. Greer*, 866 A.2d 433, 435 (Pa. Super. 2005). Pa. R. Evid. 201 (judicial notice of adjudicative facts).

continuance, but said it would revisit the time-credit issue at sentencing if Appellant were convicted. *Id.*

During the hearing, Officer Cramer was asked — among other questions — how Appellant performed on the finger-to-nose field sobriety test, and the officer asked to review his report. N.T. at 22. Appellant's counsel objected, but the trial court permitted Officer Cramer to refresh his recollection with the report.

During the suppression hearing, Appellant also testified. He stated that he told Officer Cramer, "I have anxiety really bad, sorry for being really anxious, jittery." N.T. at 55. He also testified that he had taken medication "at least three hours prior to being stop[ped] by the officer." *Id.* at 56. He further testified that he had informed Officer Cramer, "I may have problems with doing [the field sobriety tests], but I can do them," and that he had lower back problems that made it "uncomfortable" to do the field tests. *Id.* at 57-58. Appellant stated that "he signed the form allowing the blood draw and the Miranda form after the blood had already been drawn," and not before the blood was taken. *Id.* at 63.

The trial court denied Appellant's suppression motion. Following a stipulated bench trial, Appellant was convicted of all counts. N.T. at 82, 93.

At his sentencing hearing later that same day,[11] Appellant claimed, "in regards to sentencing, there is an issue going on currently right now with another county. I was already in prison for this crime through a different county, which is why we were asking for that time to work this out." N.T. at 94. He said that his trial counsel "tried to get in contact" with York County. *Id.* After prompting from the trial court, trial counsel further explained:

> [Appellant] does have an order saying that he should have been released from supervision in York County July of 2014. The order came down in May of 2015 stating that he has completed community service as directed on July 2014, and that all the supervision fees would be waived, and that the court costs were placed on York County.
>
> So our contention is that he should receive the jail credit for the time that he was incarcerated since he didn't have bail on this case while he was incarcerated in York County with a detainer for allegedly violating. . . . So we would ask the Court to consider allowing him to have credit dating back to his date of incarceration which was May 28.

*Id.* at 94-95. Appellant added that he believed that he should receive credit beginning on May 21, 2015. *Id.* at 95. In response, the Commonwealth stated that it had just become aware of this issue that morning, but it "would obviously object to any sort of double dipping with the [parole violation]." *Id.* The trial court then deferred the commencement of Appellant's sentence to 8:00 P.M. on Friday, May 31, 2016, "and that should

---

[11] Appellant did not request a presentence investigation report.

give you, Counsel, an opportunity to clarify the situation, and get back to me and we can straighten out any time credit issue at that time." *Id.* at 96.

Appellant did not file any post-trial or post-sentence motions. This timely direct appeal with appointed appellate counsel followed.

On August 29, 2016, appellate counsel sent a letter to Appellant, informing him that she intended to file a petition for leave to withdraw. Appellate counsel filed an *Anders* Brief and a petition to withdraw on the same day. Appellant did not file a *pro se* response. On September 2, 2016, the Commonwealth sent a letter to this Court stating that it did not intend to file a responsive brief.[12]

"When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010) (internal citation omitted). An *Anders* brief shall comply with the requirements set forth by the Supreme Court of Pennsylvania in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009):

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record,

---

[12] The trial court did not file an opinion.

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Counsel seeking to withdraw on direct appeal must meet the following obligations to his or her client:

Counsel must also provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in the *Anders* brief.

*Commonwealth v. Orellana*, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Goodwin*, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*) (quoting *Commonwealth v. Wright*, 846 A.2d 730, 736 (Pa. Super. 2004)). Finally, "this Court must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnotes and citations omitted).

In this appeal, we observe that appellate counsel's August 29, 2016 correspondence to Appellant provided a copy of the *Anders* Brief to Appellant and advised Appellant of his right either to retain new counsel or to proceed *pro se* on appeal to raise any points he deemed worthy of the

court's attention. Further, appellate counsel's **Anders** Brief, at 5-6, complies with prevailing law in that counsel has provided a procedural and factual summary of the case with references to the record. Appellate counsel additionally advances relevant portions of the record that arguably support Appellant's claims on appeal. **Id.** at 8-18. Ultimately, appellate counsel cites her reasons and "conclusion that the instant appeal is wholly frivolous." **Id.** at 7. Counsel has complied with the requirements of **Santiago** and **Orellana**. We therefore proceed to conduct an independent review to ascertain whether the appeal is indeed wholly frivolous.

The **Anders** Brief raises eleven issues for review on appeal:

[1. Appellant] raises several issues in his letter to counsel that can essentially be grouped together as a credibility issue. . . .

[2. Appellant] makes a claim in his letter to Counsel that he was "profiled" as a previous DUI offender by the Officer after the Officer ran his information during the traffic stop. . . .

[3. Appellant] next complains that he was not read his **Miranda** warnings as soon as he was arrested. . . .

[4. Appellant] next claims that he asked the Officer during the traffic stop if he had his dash camera on, and the Officer told him that he did not. . . .

[5. Appellant] next asserts that following the traffic stop, the blood draw at the hospital and being processed at the police station, he was released. [Appellant] believes, by law, he should have been held until his "pre-trial." . . .

[6.] Next [Appellant] claims that he could not have been intoxicated on the date in question because his car was released back to him later the same day. . . .

- 10 -

[7.    Appellant] claims his "rights were violated" [because] there were "mistakes" on the "report." . . .

[8.    Appellant] claims that the Officer amended "reports" and added charges. . . .

[9.    Appellant] believes that Officer Cramer should not have been permitted to refresh his recollection with his report while testifying during the suppression hearing. . . .

[10.   Appellant] claims that he served double time for this case. . .
[11.] Trial Counsel filed a Suppression Motion on behalf of [Appellant,] challeng[ing] the probable cause to arrest [Appellant].

*Anders* Brief at 8-16.

Appellant's first issue challenges the trial court's finding that "the testimony of Officer Cramer [was] entirely credible and that of [Appellant] lack[ed] any credibility."  N.T. at 82.

[Appellant] raises several specific instances where he believes the Officers were not telling the truth.  They include:

1.    Officer Cramer testified that the car door hit [Appellant] as he exited the vehicle, but [Appellant] contends that did not happen.  [N.T. at] 16, 56.

2.    Officer Cramer testified the surface that the field sobriety tests were conducted on was a "very very slight slant", but [Appellant] testified that it was "hilly".  [N.T. at] 34, 58.

3.    Officer Cramer testified that [Appellant] did not state he had any disabilities prior to performing the field sobriety tests, but [Appellant] testified he informed the officer he had neck and back issues.  [N.T. at] 56-57.

4.    Officer Redinger testified that he gave [Appellant] his Miranda warnings prior to speaking to

him, but [Appellant] testified that he wasn't given Miranda warning until after he was questioned. [N.T. at] 49, 62.

5. Officer Redinger testified that he read [Appellant] his O'Connell warnings before his blood was drawn, but [Appellant] testified that he was only read them after his blood was drawn. [N.T. at] 26-28, 62-63.

***Anders*** Brief at 8-9. All of the challenged statements were made during the suppression hearing.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Bomar***, 826 A.2d 831, 842 (Pa. 2003), ***cert. denied***, 540 U.S. 1115 (2004). As an appellate court, we "defer to the credibility determinations of the trial court, which had the opportunity to observe the demeanor of witnesses and to hear them testify." ***Id.*** at 843. Thus, in the current action, we must defer to the trial court's credibility determinations adverse to Appellant and to those factual findings that are supported by testimony in the record. The findings at issue here have record support. ***See*** N.T. at 16, 26-28, 34, 49. Hence, Appellant's first issue has no merit.

Appellant's next claim is that he was "profiled." ***Anders*** Brief at 10. However, this issue was not preserved in the lower court, and there is nothing in the certified record supporting this allegation. ***See*** Pa.R.A.P.

- 12 -

302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also* Pa.R.A.P. 1921 ("The original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court shall constitute the record on appeal in all cases").  Therefore, Appellant's second issue is waived.

Appellant's third claim is "that he was not read his *Miranda* warnings as soon as he was arrested."  *Anders* Brief at 11.

> *Miranda* warnings are necessary any time a defendant is subject to a custodial interrogation.  As the United States Supreme Court explained, "the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent."  *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).

*Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006), *cert. denied*, 552 U.S. 939 (2007).   However, the warnings are required only prior to interrogation.  Thus, in *Commonwealth v. Ventura*, 975 A.2d 1128, 1137 (Pa. Super. 2008), *appeal denied*, 987 A.2d 161 (Pa. 2009), we held that where a defendant in custody who was not yet being interrogated made statements prior to receiving *Miranda* warnings, there was no *Miranda* violation because the warnings were not yet required.

Here, Appellant bases his argument under *Miranda* on the theory that the police needed to inform him of his *Miranda* rights immediately upon his arrest, but that contention is incorrect.  Police need only to give *Miranda*

warnings if and when the defendant is interrogated. *See Gaul*, 912 A.2d at 255; *Ventura*, 975 A.2d at 1137. Appellant was in custody after his arrest, but he was not under interrogation at the time he claims he should have been given his *Miranda* warnings. *See* N.T. 25. Accordingly, Appellant's third issue raised on appeal is meritless.

Appellant next contends "that during all traffic stops, there is a law requiring officers to have their dash cameras on." *Anders* Brief at 11. No party has cited any such law to us, and, after careful review, we agree with counsel that this issue is without merit.

Appellant's fifth assertion is that he "should have been held until his 'pre-trial.'" *Anders* Brief at 12. It is not clear whether Appellant's reference to his "pre-trial" refers to his preliminary hearing, his pre-trial/suppression hearing, or some other stage in the pretrial process.[13] If an issue raised on appeal is too vague for the court to identify and address it, then it is waived. *See Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006), *appeal denied*, 919 A.2d 956 (Pa. 2007); *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. 2000) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review"), *aff'd*, 812 A.2d 631 (Pa. 2002). We conclude that because we cannot identify the exact nature

---

[13] Appellate counsel was also "not sure what [Appellant] means by a 'pre-trial.'" *Anders* Brief at 12.

of Appellant's fifth issue, we cannot provide meaningful review, and this issue therefore is waived.

Next, Appellant argues that "he could not have been intoxicated on the date in question because his car was released back to him later the same day." **Anders** Brief at 12. After a thorough review, we find nothing in the record regarding the release of Appellant's automobile. We are precluded from reviewing facts outside the certified record. **See** Pa.R.A.P. 1921; **Commonwealth v. Williams**, 715 A.2d 1101, 1103 (Pa. 1998) ("appellate Courts are limited to considering only those facts that have been duly certified in the record on appeal"). Appellant does not direct this Court to any support for his sixth issue, and we therefore conclude that Appellant is not entitled to relief on this issue.

Appellant's seventh allegation is that "his 'rights were violated,'" because, in the police report, "his name and address were not in the correct area, the make of his car was inaccurate and the box for 'request lab services' was not checked 'yes.'" **Anders** Brief at 13. According to Pa.R.Crim.P. 109:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, citation, summons, or warrant, or a defect in the procedures of these rules, unless the defendant raises the defect before the conclusion of the trial in a summary case or before the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant.

- 15 -

In the current matter, the defects that Appellant avers were not raised at the preliminary hearing, and Appellant fails to show that the defects were in any way prejudicial. Appellate counsel asserts that "the defects are certainly not prejudicial to [Appellant's] rights." **Anders** Brief at 13. Like counsel, we see no basis to conclude that Appellant was prejudiced by the handful of typographical and formatting errors that he raises. Thus, this seventh issue is meritless.

Appellant's eighth issue is that the complaint against him should not have been amended to add charges. **Anders** Brief at 14. Initially, Appellant was charged only with driving under the influence of a controlled substance that impaired his ability to drive (second offense).[14] The information was later amended to include the other two DUI counts and the three traffic violations of which Appellant was convicted.

> [W]hen presented with a question concerning the propriety of an amendment, we consider:
>
> > [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended

_____

[14] The charge was under 75 Pa.C.S. § 3802(d)(2), which provides:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances: . . . The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.

indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

**Commonwealth v. Beck**, 78 A.3d 656, 660 (Pa. Super. 2013) (citations omitted). Here, the additional DUI counts and the traffic violations all arose from the same factual situation that led to Appellant's arrest. The additional DUI counts merely added that Appellant was driving under the influence of a Schedule I controlled substance and its metabolite.[15] The traffic charges merely reflected Appellant's impaired driving. As Appellant's counsel points out, the amendments did not add anything significantly new: "[t]he Affidavits of Probable Cause are identical; no different set of events is alleged." **Anders** Brief at 15. Appellant has not shown prejudice resulting from these amendments, and we discern none. Appellant therefore is entitled to no relief on his eighth issue.

Appellant suggests that Officer Cramer should not have been permitted to refresh his recollection with his report while testifying during

---

[15] **See** 75 Pa.C.S. §§ 3802(d)(1)(i), (iii) (prohibiting operation of a vehicle if "There is in the individual's blood any amount of a: (i) Schedule I controlled substance, as defined in . . . The Controlled Substance, Drug, Device and Cosmetic Act . . . or (iii) metabolite of a substance under subparagraph (i) . . .").

the suppression hearing. ***Anders*** Brief at 15 (citing N.T. at 22). Pursuant to Pa. R. Evid. 612(a): "A witness may use a writing or other item to refresh memory for the purpose of testifying while testifying, or before testifying." Appellant's premise is thereby negated by our Rules of Evidence, and this issue is without merit.

Next, Appellant argues that he "served double time for this case" because "he already served 92 days while in York County on this case." ***Anders*** Brief at 15. However, Appellant did not serve time in York County for the current matter. The time he served in York County was for a violation of his probation stemming from the separate DUI that had occurred in York County more than two years earlier.[16] Appellant was still serving probation for his York County DUI when he committed his Lancaster County DUI. The Lancaster County DUI may have triggered the revocation of his probation in York County, but the time he served in York County was for his York County offense, not this one. Thus, Appellant did not earn credit for time served while incarcerated in York County, and Appellant's penultimate challenge is meritless.

Finally, Appellant challenges the trial court's denial of his suppression motion. ***Anders*** Brief at 16-18. Specifically, Appellant claims that Officer Cramer had insufficient probable cause to arrest him and that all evidence

---

[16] ***See*** Docket No. CP-67-CR-0000588-2013.

acquired subsequent to his arrest therefore should be suppressed, including the results of his blood test. *Id.* at 16. "The applicable standard for determining probable cause calls for a totality of circumstances analysis, not a mechanical consideration of specific factors." *Commonwealth v. Salter*, 121 A.3d 987, 995 (Pa. Super. 2015). Here, the police arrested Appellant after receiving a report of reckless driving, and Officer Cramer actually witnessed Appellant speeding, swerving, repeatedly crossing a double yellow line, failing to use a turn signal, and failing to stop at a stop sign. N.T. at 10-13; Stipulation, 4/25/16, at 1 ¶ 2a. Officer Cramer also observed Appellant's bloodshot and glassy eyes, slurred speech, lack of coordination, and confusion. N.T. at 14-16. Finally, Appellant himself admitted to Officer Cramer that he had taken Soma and Xanax. *Id.* at 16. The totality of these circumstances was more than sufficient to create probable cause to arrest Appellant. Thus, the trial court properly denied Appellant's motion to suppress the evidence gathered after the arrest.

Based on the foregoing, we find all of Appellant's claims meritless and/or waived. In addition, we have reviewed the certified record consistent with *Flowers*, 113 A.3d at 1250, and have discovered no additional arguably meritorious issues. Accordingly, we grant appellate counsel's petition to withdraw and affirm the judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/14/2017